FIRESTONE GREENBERGER PLLC
*Attorneys for Defendants/Counterclaimants*
Jordan Greenberger
Callie J. Kramsky
104 West 40th Street, 4th Floor
New York, NY 10018
(212) 597-2255
jg@firegreenlaw.com
ck@firegreenlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARL FISCHER, LLC and THEODORE PRESSER CO., <br><br> Plaintiffs, <br><br> -against- <br><br> ALBERT AHRONHEIM and JOSEPH MICHAEL CARL, <br><br> Defendants. | Case No. 1:26-cv-01960-LAP <br><br> **ANSWER AND COUNTERCLAIMS** |

Albert Ahronheim ("Ahronheim") and Joseph Michael Carl ("Carl") (together, the "Defendants" or "Counterclaimants" or "Authors"), for their response to the Amended Complaint [Doc. 19] ("Complaint") of plaintiffs Carl Fischer, LLC ("CF") and Theodore Presser Co. ("Presser") (together, the "Plaintiffs" or "Publishers"), plead the following:

**PARTIES**

1. *Plaintiff Carl Fischer, LLC ("Fischer") is a limited liability company whose principal place of business is 48 Wall Street, New York, New York 10005.*

**Response:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint, and therefore deny them.

1

*2. Plaintiff Theodore Presser Co. ("Presser") is a corporation whose principal place of business is 105 Great Valley Parkway, Malvern, Pennsylvania 19355.*

**Response:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint, and therefore deny them.

*3. Since 2004, Presser has been an affiliate of Fischer. Presser and Fischer are referred to herein collectively as "Plaintiffs."*

**Response:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation in the first sentence of paragraph 3 of the Complaint and therefore deny it; Defendants admit that CF and Presser refer to themselves collectively as the "Plaintiffs" in the Complaint.

*4. Defendant Albert Ahronheim ("Ahronheim") is over the age of 18, and, upon information and belief, is a citizen and resident of the State of New York, residing at 222 E. 80th Street, Apt. 12C, New York, New York 10075.*

**Response:** Defendants admit the allegations in paragraph 4 of the Complaint.

*5. Defendant Joseph Michael Carl ("Carl") is over the age of 18, and, upon information and belief, is a citizen and resident of the State of Washington, residing at 14423 192nd Avenue, Bonney Lake, Washington 98391.*

**Response:** Defendants admit the allegations in paragraph 5 of the Complaint.

*6. Ahronheim and Carl are referred to herein collectively as "Defendants."*

**Response:** Defendants admit the allegations in paragraph 6 of the Complaint.

## NATURE OF THE ACTION

*7. This is an action for a Declaratory Judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201-02, declaring Plaintiffs to be the sole owners of all rights in a musical composition entitled "Let's Go Blue" (the "Composition"), best known as the fight song for the University of Michigan football team; and for tortious interference with an existing economic relationship under New York law in connection with Plaintiffs' efforts to license the Composition for use by one or more third parties.*

**Response:** Paragraph 7 of the Complaint is a legal conclusion for which no response is required. To the extent that a response is required, Defendants deny that Plaintiffs are the sole owners of all rights in the Composition, deny liability for tortious interference, and lack knowledge and information sufficient to form a belief as to the remainder of the allegations and therefore deny them, except Defendants admit that the Composition is frequently associated with the University of Michigan football team and with other sports teams both at the University of Michigan and elsewhere.

## JURISDICTION AND VENUE

*8. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338, the Federal Declaratory Judgment Act, 28 U.S.C. §2201-02 and the U.S. Copyright Act of 1976, 17 U.S.C. §101 et seq. This Court has subject matter jurisdiction of the Plaintiffs' state law claims under the doctrine of supplemental jurisdiction, in that such claims flow from a common nucleus of operative facts.*

**Response:** Paragraph 8 of the Complaint is a legal conclusion for which no response is required. To the extent that a response is required, Defendants admit that the Court has subject

3

matter jurisdiction of the federal declaratory judgment claim, which relates to the U.S. Copyright Act, and that the Court has discretion to exercise supplemental jurisdiction over related state law claims.

9. Venue is proper in this Judicial District because Ahronheim is a citizen of the State of New York, residing in the State of New York, and Ahronheim's grant of exclusive rights in the Composition to Presser in a written agreement dated January 9, 1978 ("Agreement"), attached here as Exhibit A, was executed by Ahronheim in the State of New York. The parties have performed and continue to perform their obligations under the Agreement in the State of New York, and the material events at issue arose in this District.

**Response:** Paragraph 9 of the Complaint is a legal conclusion for which no response is required.  To the extent that a response is required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations, and therefore deny, except Defendants admit that Ahronheim is a citizen and resident of the State of New York and that there is an agreement attached as Exhibit A to the Complaint.

## STATEMENT OF FACTS

10. The Composition was written by Ahronheim and Carl.

**Response:** Defendants admit the allegations in paragraph 10 of the Complaint.

11. In or about January 9, 1978 Defendants Ahronheim and Carl assigned, transferred and conveyed to Presser all of their worldwide right, title and interest in and to the Composition, including the copyright therein and the rights of renewal and extension of such copyrights and of derivative copyrights in the Composition. This assignment was memorialized in the document attached as Exhibit A (the "Assignment").

4

**Response:** Defendants admit the allegations in paragraph 11 of the Complaint, except deny them to the extent they are inconsistent with the terms of the Assignment, the terms of which control over Plaintiffs' characterization in the Complaint.

12. *At all times since the execution of the Assignment to Presser, Plaintiffs have performed their obligations under the Assignment by issuing licenses for the exploitation of the Composition and accounting and paying royalties to Defendants in connection with such exploitation.*

**Response:** Defendants deny the allegations in paragraph 12 of the Complaint.

13. *In May of 2011, Defendants' counsel served Presser with a notice of termination regarding the Composition ("Notice") pursuant to section 203(a) of the U.S. Copyright Act, Title 17 U.S.C.*

**Response:** Defendants admit that in May 2011 Presser was served with the Notice pursuant to section 203 of the Copyright Act, but lack knowledge or information sufficient to form a belief as to the truth of the allegation that the Notice was served by "Defendants' counsel." Ahronheim believes that he, himself, served the Notice.

14. *The Notice asserted an Effective Date of May 9, 2013.*

**Response:** Defendants admit the allegation in paragraph 14 of the Complaint and refer to the Notice for its content.

15. *Online records of the U.S. Copyright Office ("USCO") do not reflect that the Notice was ever recorded prior to its claimed Effective Date.*

5

**Response:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint, and therefore deny them, and respectfully refer the Court to the official certified records of the USCO.

16. *The Copyright Act requires such timely recordation of a termination notice before its Effective Date as a condition of its taking effect.*

**Response:** Paragraph 16 of the Complaint is a legal conclusion to which no response is required.  To the extent a response is required, Defendants refer the Court to the relevant provisions in the Copyright Act, deny the allegations to the extent Plaintiffs' characterization is inconsistent with the statute, and respectfully refer the Court to Defendants' various affirmative defenses and the December 13, 2013, email from the manager of Plaintiffs' Licensing & Copyright Departments, Mr. Jay Berger, to Ahronheim in which Mr. Berger wrote on behalf of Plaintiffs, "…I now understand that you and Mr. Carl terminated the copyright to 'Let's Go Blue' and are now the copyright owners of the same.".

17. *Plaintiffs continued to license and administer rights in the Composition following the service of the Notice, and continued making royalty payments to Defendants under the Agreement.*

**Response:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint, and therefore deny them, except admit that certain royalties were paid to Defendants following the service of the Notice and that Plaintiffs were involved in certain exploitations of the Composition following service of the Notice on an ad hoc basis.

*18. Between the service of the Notice and the end of 2025, Defendants continued to receive and accept royalty payments under the Agreement, even after the purported Effective Date of the Notice.*

**Response:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint, and therefore deny them, except admit that certain monies were received and accepted by Defendants following the service of the Notice.

*19. Among the third parties to whom Plaintiffs have licensed the Composition is Electronic Arts, Inc., ("EA") which licensed the Composition in 2024 for inclusion in its popular video game College Football '25 (the "Game").*

**Response:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint, except admit that Plaintiffs purported to license the Composition to EA in relation to the Game and respectfully refer the Court to the terms and conditions of the purported license agreement.

*20. Upon information and belief, by November 2024, the Game had become the all-time best-selling sports video game in the U.S. based on dollar volume of sales.*

**Response:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint, except admit that they understand the Game is very popular and has been financially successful.

*21. On or about December 19, 2024, Defendants' counsel sent a letter to Plaintiffs asserting that Plaintiffs' U.S. rights in the Composition were terminated pursuant to the Notice.*

**Response:** Defendants admit the allegations in paragraph 21 of the Complaint, except deny them to the extent that they are inconsistent with the content of the referenced December 19, 2024 letter.  Defendants also sent letters (and had other communications with Plaintiffs) prior to December 19, 2024 asserting that Plaintiffs' rights in the Composition were terminated pursuant to the Notice.

22. On January 30, 2025, counsel for Plaintiffs responded to Defendants' letter and explained that the alleged termination was ineffective because it was not recorded in the USCO.

**Response:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Complaint, and therefore deny them, except admit that at various times before and after January 30, 2025, counsel for the Plaintiffs asserted that the termination was ineffective on that alleged basis.

23. In fact, Defendants had no right at law to claim U.S. copyright ownership in the Composition, having assigned those rights to Plaintiffs in 1978 and having failed to recapture them under the termination provisions of the Copyright Act.

**Response:** Defendants deny the allegations in paragraph 23 of the Complaint.

24. In early 2025, EA communicated to Plaintiffs that it wished to continue to license the Composition for the 2026 edition of the Game.

**Response:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint, and therefore deny.

25. Upon information and belief, on or about August 8, 2024, counsel for Defendants contacted EA and falsely asserted that Plaintiffs' rights in the Composition had been terminated under 17 U.S.C. § 203(a).

8

**Response:** Defendants deny the allegations in paragraph 25 of the Complaint, except admit that counsel for Defendants sent EA a letter dated August 8, 2024 and respectfully refer the Court to that letter for its content.

26. *Upon information and belief, counsel for Defendants further demanded, under threat of litigation, that EA purchase a license from Defendants to use the Composition in the Game or cease and desist from using the Composition in the Game.*

**Response:** Defendants deny the allegations in paragraph 26 of the Complaint with respect to the August 8, 2024 letter.  To the extent that Plaintiffs refer to future communications from Defendants' counsel, Defendants admit that they requested EA obtain a license from Defendants to use the Composition in relation to the Game and alleged copyright infringement, and otherwise deny the allegations to the extent they are inconsistent with the actual content of Defendants' written and oral communications with EA.

27. *The false assertion described in paragraph 25 above and the demands described in paragraph 26 above are collectively referred to as the "Interference."*

**Response:** Defendants deny the allegations in paragraph 27 of the Complaint, except admit that Plaintiffs use the term "Interference" in the Complaint.

28. *EA advised Plaintiffs of Defendants' Interference.*

**Response:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint, and therefore deny.

29. *Before Defendants committed the Interference, they knew that they had not recorded the Notice in the USCO as required by the Copyright Act, because such recordation is a matter*

*of public record and because Plaintiffs had informed Defendants' counsel not later than January 30, 2025 that there was no record of any such recordation.*

**Response:** Defendants deny the allegations in paragraph 29 of the Complaint, except admit that prior to January 30, 2025 Plaintiffs' counsel had informed Defendants' counsel that they had not located a recorded version of the Notice.

*30. Upon information and belief, Defendants have nevertheless purported to negotiate with EA regarding EA's use of the Composition, despite his lack of rights in the work.*

**Response:** Defendants deny the allegations in paragraph 30 of the Complaint, except admit that they requested EA obtain a license from Defendants to use the Composition in relation to the Game and alleged copyright infringement.

*31. As a result of Defendants' Interference, EA has discontinued the use of the Composition in the 2025 edition of the Game and on June 3, 2025 advised Plaintiffs that it would "not be including" the Composition "in any future releases of College Football."*

**Response:** Defendants deny the first clause in paragraph 31 of the Complaint, and as to the remainder of the allegations Defendants lack knowledge or information sufficient to form a belief as to the truth and therefore deny.

*32. In an email to Plaintiffs, EA specifically cited Defendants' Interference as its basis for discontinuing the use of the Composition.*

**Response:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 of the Complaint and therefore deny; except they deny "Interference" and respectfully refer the Court to the content of the referenced email.

*33. Upon information and belief, Defendants have falsely advised the performing-rights organization ASCAP that Plaintiffs are no longer the publishers of the Composition.*

**Response:** Defendants deny the allegations in paragraph 33 of the Complaint, except admit that Ahronheim has communicated with ASCAP concerning the payment of performance royalties.

*34. ASCAP has discontinued making payments to Plaintiffs in connection with public performances of the Composition.*

**Response:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 of the Complaint and therefore deny.

## CAUSES OF ACTION

## COUNT I: DECLARATORY JUDGMENT OF COPYRIGHT OWNERSHIP

*35. Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1-34 above.*

**Response:** Defendants repeat and reallege their responses to paragraphs 1-34 of the Complaint.

*36. The conflicting positions of Plaintiffs and Defendants are actual, immediate, and substantial, and a justiciable controversy exists over the opposing parties' respective rights with respect to the Composition.*

**Response:** Paragraph 36 of the Complaint is a legal conclusion to which no response is required, but to the extent a response is required Defendants admit that there is a justiciable controversy concerning the parties' rights with respect to the Composition.

*37. There is a current, definite and concrete controversy between Plaintiffs and Defendants having adverse legal interests, and the controversy is sufficiently immediate and real to warrant the issuance of a Declaratory Judgment under 28 U.S.C. § 2201. The controversy is amenable to specific relief through a decree of a conclusive character.*

**Response:** Paragraph 37 of the Complaint is a legal conclusion to which no response is required, but to the extent a response is required Defendants admit that there is a justiciable controversy concerning the parties' rights with respect to the Composition.

*38. Defendants' claims of copyright ownership in the Composition are without legal foundation. Plaintiffs are the sole owners of the copyright in the Composition that is the subject matter of this Complaint.*

**Response:** Defendants deny the allegations in paragraph 38 of the Complaint.

*39. A Declaratory Judgment in this case would serve a useful purpose in clarifying and settling the respective rights and obligations of the parties, and will terminate and afford relief from the uncertainty that is resulting from this controversy upon the Plaintiffs, who have invested substantial money and their time, effort and expertise in developing the market for the Composition.*

**Response:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39 of the Complaint and therefore deny, except admit that a declaratory judgment would serve a useful purpose in clarifying and settling the parties' respective rights and obligations with respect to the Composition.

*40. Plaintiffs request the Court to enter a Judgment and Order that (i) Plaintiffs are the sole copyright owners of the Composition; (ii) Plaintiffs, and not Defendants, are entitled to*

*quiet title to the ownership of the copyright in and to the Composition; and (iii) restraining and enjoining Defendants from asserting any rights of ownership of the Composition.*

**Response:** Defendants admit that Plaintiffs are making that request of the Court, but deny that Plaintiffs are entitled to such relief or remedy.

*41. Plaintiffs have no adequate remedy at law.*

**Response:** Paragraph 41 of the Complaint is a legal conclusion to which no response is required, but to the extent a response is required Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations and therefore deny.

## COUNT II: TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONSHIPS

*42. Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1-41 above.*

**Response:** Defendants repeat and reallege their responses to paragraphs 1-41 of the Complaint.

*43. At the time of Defendants' Interference, Plaintiffs had an existing economic relationship with EA, because they had granted EA a license to use the Composition in the Game, and also a prospective economic relationship, because EA had communicated to Plaintiffs that it wished to continue to license the Composition for the 2026 edition of the Game.*

**Response:** Defendants deny the first clause in paragraph 43 of the Complaint and deny that Plaintiffs granted EA a valid license to use the Composition in the Game, and as to the remainder of the allegations Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and therefore deny.

13

44. At the time of the Interference, Defendants knew of the existing and prospective economic relationships between Plaintiffs and EA, specifically that EA had obtained a license from Plaintiffs to use the Composition in the Game in 2024, and that EA wished to license the Composition for the 2026 edition of the Game.

**Response:** Defendants deny the allegations in paragraph 44 of the Complaint.

45. Defendants, by their acts as described above, including but not limited to his threat to commence litigation against EA, intentionally interfered with Plaintiffs' existing and prospective economic relationship with EA.

**Response:** Defendants deny the allegations in paragraph 45 of the Complaint.

46. Defendants' acts as described above, including but not limited to his threat to commence litigation against EA and his false statement of copyright ownership to EA were wrongful and improper, because Ahronheim has and had no legal right to assert any claim of copyright ownership in the Composition.

**Response:** Defendants deny the allegations in paragraph 46 of the Complaint.

47. As a result of Defendants' actions, EA has discontinued the use of the Composition in past and future editions of the Game.

**Response:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 of the Complaint and therefore deny.

48. Plaintiffs have been damaged by Defendants' tortious acts in an amount to be determined at trial, because such acts have injured Plaintiffs' existing economic relationship with EA.

**Response:** Defendants deny the allegations in paragraph 48 of the Complaint.

14

## AFFIRMATIVE DEFENSES

1.      Plaintiffs fail to state a cause of action.

2.      Plaintiffs' claims are barred by the statute of limitations.

3.      Plaintiffs' claims are barred by the doctrine of waiver.

4.      Plaintiffs' claims are barred by the doctrine of estoppel.

5.      Plaintiffs' claims are barred by the doctrine of release.

6.      Plaintiffs' claims are barred by the doctrine of abandonment.

7.      Plaintiffs' claims are barred by the doctrine of rescission.

8.      Plaintiffs' claims are barred by the doctrine of laches.

9.      Plaintiffs' claims are barred by the doctrine of acquiescence.

10.     Plaintiffs' claims are barred by their own breach of contract.

11.     Plaintiffs' claims are barred by the doctrines of unclean hands and copyright misuse.

12.     Plaintiffs failed to mitigate their alleged damages, and any alleged damages are offset by Plaintiffs' liability to Defendant.

15

**COUNTERCLAIMS**

Authors, for their counterclaims against Plaintiffs, plead the following:

PRELIMINARY STATEMENT

1.      Ahronheim and Carl are joint authors of the musical composition entitled *Let's Go Blue!* (the "Song").

2.      In or about January 1978, they assigned certain copyright interests in the Song to Presser.

3.      In 2013, Plaintiffs' rights in the Song terminated and the rights reverted to Authors.

4.      In fact, in a December 2013 email to Ahronheim, the Manager of the Licensing & Copyright department for both CF and Presser wrote: "…I now understand that you and Mr. Carl terminated the copyright to 'Let's Go Blue' and are now the copyright owners of the same."

5.      From at least that time, Plaintiffs were aware that Authors owned the copyright in the Song and therefore that Authors had the exclusive right to do, and to authorize, any of the following pursuant to 17 U.S.C. § 106: to reproduce the Song, to prepare derivatives of the Song, to distribute copies of the Song to the public, to perform the Song work publicly, and to publicly display the Song.

6.      In or about June 2024, Authors learned that EA[1] had begun to exploit the Song in connection with its video game *College Football 25* (the "Game").

---

[1] Unless otherwise defined herein, capitalized terms in the Complaint are adopted in the Authors' counterclaims.

7.    Authors never granted EA a license to exploit the Song in connection with the Game.

8.    Nor was Authors' permission even requested.

9.    Upon investigating the matter, Authors learned that EA was exploiting the Song in connection with the Game pursuant to a purported license from one or both Plaintiffs.

10.    Plaintiffs, however, did not have the right to license the Song to EA in connection with the Game.

11.    As Plaintiffs knew, and confirmed in the December 2013 email, any rights Plaintiffs may have had in the Song terminated in 2013 and reverted to Authors.

12.    Further, Plaintiffs did not request Authors' permission to license the Song to EA, and Authors did not authorize Plaintiffs to license the Song to EA in connection with the Game.

13.    Plaintiffs' purported licensing the Song to EA, in which Plaintiffs identified themselves as the owners of the copyright, infringed Authors' copyright in the Song and violated the Copyright Act's provisions concerning copyright management information ("CMI").

14.    In the months immediately following Authors bringing the issue to Plaintiffs' attention in an attempt to resolve the matter absent litigation, Plaintiffs admitted to both Authors and EA that it was an error for them to have purportedly licensed the song to EA.

15.    But then, after the matter was not promptly resolved and Plaintiffs engaged outside counsel, Plaintiffs manufactured a defense that (notwithstanding the December 2013 email and the parties' subsequent words and acts) the copyright had not reverted to Authors in 2013 because Plaintiffs' counsel had not located a copy of the termination notice recorded with the copyright office.  This litigation ensued.

## PARTIES

16.    Ahronheim is an individual residing in the State of New York.

17.    Carl is an individual residing in the State of Washington.

18.    On information and belief, CF is a Delaware limited liability company, authorized to do business in New York, with a principal place of business in New York, New York.

19.    On information and belief, Presser is a Pennsylvania corporation, not authorized to do business in New York, whose principal place of business is in Pennsylvania.

## JURISDICTION AND VENUE

20.    The counterclaims arise under the Copyright Act of 1976 (17 U.S.C. § 101 *et seq.*), and therefore the Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).  The Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

21.    Venue is appropriate in this district because the counterclaims are asserted in response to an action commenced in this district and because, on information and belief, Plaintiffs or their agents reside or may be found in this district (28 U.S.C. § 1400(a)); and, on information and belief, Plaintiffs' infringing conduct originated in this district (28 U.S.C. § 1391(b)(2)) and they are otherwise subject to the court's personal jurisdiction.

## FACTS APPLICABLE TO ALL CAUSES OF ACTION

22.    Ahronheim and Carl are joint authors of the Song.

23.    On information and belief, Ahronheim and Carl registered the Song with the United States Copyright Office in 1977, receiving registration number EU779584.

18

24. By agreement dated January 9, 1978, Ahronheim and Carl assigned certain rights in the Song to Presser.

25. On information and belief, on June 30, 1979, a supplement to the original copyright registration was recorded with the Copyright Office, receiving registration number Pau119200.

26. On or about May 5, 2011, pursuant to 17 U.S.C. § 203, Ahronheim and Carl executed and served upon Presser a termination notice regarding the Song. A true and correct copy of the termination notice, with proof of service, is annexed hereto as Exhibit A.

27. On information and belief, the termination notice was received by both CF and Presser on or about May 6, 2011.

28. The notice stated that the termination would take effect on May 9, 2013.

29. Between service of the termination notice and May 9, 2013, Presser did not object to or purport to reject the termination notice.

30. On December 13, 2013, Ahronheim received an email concerning the Song from Jay Berger, who on information and belief was at that time the Manager of the Licensing & Copyright department for both CF and Presser. A true and correct copy of the email is annexed hereto as Exhibit B.

31. The email states in pertinent part, "…I now understand that you and Mr. Carl terminated the copyright to 'Let's Go Blue' and are now the copyright owners of the same." *Id.*

32. In or about July 2024, Authors learned that EA incorporated the Song in the Game.

33.    Authors did not authorize EA to incorporate the Song in the Game or related marketing media.

34.    Authors did not receive any compensation from EA, or Plaintiffs, relating to usage of the Song in the Game and/or related marketing media.

35.    On or about August 8, 2024, Authors sent EA a letter concerning this issue, requesting that EA include proper accreditation for Authors as the authors of the Song in association with the Game; and execute a synchronization license to permit EA's continued distribution and sale of the Game, with the Song remaining incorporated as-is, with appropriate compensation paid to Authors.

36.    Shortly thereafter, EA's in-house counsel advised Authors that EA had obtained a synchronization license from Fischer in or about June 2024 for a paltry sum of approximately $1,000.

37.    This came as a surprise to Authors, as Fisher did not have authority to license the Song in any capacity (and $1,000 was a shockingly low license fee).

38.    On or about August 16, 2024, Authors wrote Fisher requesting an explanation.

39.    In the weeks that followed, Authors exchanged various emails with Fisher.

40.    Authors also further communicated with EA's in-house counsel, who on September 4, 2024, informed Authors that Plaintiffs had in sum and substance admitted that they had incorrectly licensed the Song.

41.    On or about November 18, 2024, Authors sent a letter to Fischer demanding that it provide an accounting of all exploitations of the Song from May 9, 2013, and that it cease and desist from copying, distributing, performing, preparing derivatives of, "licensing," or otherwise

20

exploiting the Song.  On or about the same day, Authors also sent a letter to EA that, *inter alia*, demanded EA cease and desist.

42.    On or about November 21, 2024, Plaintiffs, by their "Licensing and Copyright Manager" (Lisa Hackett), sent an email responding to Authors' November 18th letter in which Plaintiffs stated in pertinent part: "When we were contacted by [counsel] obo Ahronheim we advised … EA that they needed to license the 'Let's Go Blue' from [Ahronheim's lawyer] directly for licensing and it was stricken from our agreement."

43.    Notwithstanding (i) the termination notice; (ii) the December 13, 2013 email from Berger; and (iii) Plaintiffs' admissions in the Summer and Fall of 2024 to both Authors and EA that they had erred in licensing the Song in connection with the Game, on or about December 16, 2024, Authors received a letter from Presser's newly appearing outside counsel stating in pertinent part:

> I have been provided with a copy of the notice of termination under 17 U.S.C. § 203 dated May 5, 2011 (the "Notice") served on TPC on behalf of Albert Mark Ahronheim and Joseph Michael Carl (collectively, the "Composers") relating to the composition entitled "Let's Go Blue" (the "Composition").
>
> Please be advised that we have found no evidence that the Notice has been recorded with the US Copyright Office. The US Copyright Act provides with respect to notices of termination, "A copy of the notice shall be recorded in the Copyright Office before the effective date of termination, as a condition to its taking effect." 17 USC § 203(a)(4)(A). Accordingly, failure to record the Notice with the US Copyright Office before the effective date of termination stated therein on May 9, 2013 is a fatal flaw which invalidates any purported reversion of copyright effectuated pursuant to the Notice. As such, all of TPC's rights in and to the Composition under copyright and otherwise pursuant to the agreement dated January 9, 1978 between TPC, on the one hand, and the Composers, on the other hand, shall continue in full force and effect for the life of copyright therein.

44.      This email was the first time that Plaintiffs had asserted to Authors that the termination notice was not effective and the first time that Plaintiffs had asserted to Authors that the copyright had not reverted to Authors in 2013.

45.      Between 2013 and December 16, 2024, Plaintiffs did not assert to Authors that the termination notice was invalid or ineffective.

46.      Between no later than the December 13, 2013, Berger email and December 16, 2024, Plaintiffs did not challenge Authors' claim of copyright ownership in the Song.

47.      Plaintiffs' assertion that the copyright termination notice was ineffective appeared to have been manufactured by Plaintiffs' outside counsel in response to Authors' infringement claim.

48.      On or about December 19, 2024, Authors responded to the December 16th letter identifying various issues with Plaintiffs' position, including without limitation that even if the termination notice had not been timely filed Plaintiffs had acknowledged Authors' ownership of the copyright in the December 13, 2013 Berger email, that Plaintiffs had otherwise waived the filing of the notice with the copyright office, that Plaintiffs were estopped from claiming the 1978 grant had not been terminated due to Plaintiffs words and conduct over the past decade-plus, and that the statute of limitations barred Plaintiffs from challenging Authors' copyright ownership.

49.      In the months that followed, the parties had various communications concerning this matter, including discussing the possibility of resolving the matter absent litigation.

50.      However, a resolution was not reached and on or about April 22, 2025, Authors wrote to Plaintiffs: "Carl Fischer should direct any third-party licensing opportunities to

22

[Authors]. Carl Fischer has no ownership or monetary rights in the song, and it is not an administrator of any of [Authors'] rights in the song. Carl Fischer is not authorized to license or otherwise exploit the song, and doing so constitutes an infringement of [Authors'] rights in the song."

51.     Authors did not hear anything further from Plaintiffs until they commenced this action nearly one year later, in March 2026.

## COUNT I – Copyright Infringement

(17 U.S.C. §§ 106 and 501)

52.     Authors repeat and reallege paragraph 1 through 51 of the Counterclaims.

53.     Authors are the joint authors and, following the reversion to them of the copyright in the Song in 2013, the sole owners of all right, title, and interest in and to the Song.

54.     Since 2013, Authors have had the exclusive rights, as set forth in 17 U.S.C. § 106, to reproduce, distribute, perform, display, and prepare derivative works based upon the Song.

55.     Notwithstanding the foregoing, and without the authorization, license, or consent of Authors, Plaintiffs have, after 2013, (a) reproduced and/or distributed the Song, and (b) authorized others (including, without limitation, EA) to reproduce, distribute, prepare derivatives of, publicly perform, and/or publicly display the Song.  This includes, but is not limited to, use of the Song in connection with the Game and related promotional media absent Authors' permission.

56.     On information and belief, the acts described herein were willful, in that Plaintiffs had actual knowledge of Authors' copyright ownership (due to, e.g., the 2011 termination notice,

the express acknowledgment contained in the Berger email of December 13, 2013, and Authors' 2024-2025 communications), yet Plaintiffs nonetheless proceeded to exploit the Song.

57.    On information and belief, from the reversion of the copyright in 2013 to the present, Plaintiffs have earned revenue and profits from their various unauthorized exploitations of the Song, including without limitation by receiving a fee from EA in relation to usage of the Song in the Game and related promotional media.

58.    As a direct and proximate result of Plaintiffs' copyright infringement, Authors have suffered, and continue to suffer, damages.

## COUNT II – Removal/Alteration of Copyright Management Information

(17 U.S.C. §§ 1202 and 1203)

59.    Authors repeat and reallege paragraph 1 through 58 of the Counterclaims.

60.    On information and belief, after the copyright reverted to Authors in 2013, Plaintiffs, without Authors' authorization, knowingly and with the intent to enable, facilitate, and conceal their infringement, provided and distributed CMI that was false, including without limitation in connection with their purported licensing of the Song to EA in connection with the Game by (a) falsely identifying to EA one or both Plaintiffs as the copyright owners of the Song, and (b) providing EA with false terms and conditions for use of the Song.

61.    On information and belief, after the copyright reverted to Authors in 2013, Plaintiffs, without the authority of authors, and knowing or having reasonable grounds to know, that it would induce, enable, facilitate, or conceal an infringement of Authors' copyright by Plaintiffs and third-parties (e.g. EA), intentionally removed or altered CMI, distributed CMI knowing that the CMI had been removed or altered without Authors' authority, and distributed

copies of the Song  knowing that CMI had been removed or altered without Authors' authority, such removal or alteration relating to falsely identifying one or both Plaintiffs as the copyright owners of the Song and providing false terms and conditions for use of the Song.

62.     As a direct and proximate result of Plaintiffs' violations of 17 U.S.C. §§ 1202(a) and 1202(b), Authors have suffered actual damages.

63.     Plaintiffs' violations have also caused irreparable harm to Authors, including harm to their reputation and the integrity of their attribution rights under the DMCA.

## PRAYER FOR RELIEF

WHEREFORE Defendants/Counterclaimants respectfully request that the Court enter a judgment in their favor, and against Plaintiffs:

A.     Dismissing the Complaint with prejudice;

B.     Pursuant to 17 U.S.C. §§ 502 and 1203(b)(1), preliminarily and permanently enjoining Plaintiffs and their owners, officers, directors, agents, servants, employees, affiliated entities, purported licensees (including EA) and all of those in active concert with them, from (a) committing the acts alleged herein, including without limitation enjoining them from distributing, reproducing, displaying, performing, creating derivative works from, licensing or otherwise exploiting the Song; (b) identifying themselves as owners and/or licensees of the copyright in the Song; and (c) providing third-parties with false terms and conditions relating to exploitations of the Song;

C.     Pursuant to 17 U.S.C. § 503, ordering Plaintiffs to destroy or otherwise dispose of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which copies of items infringing editions of Song may be reproduced;

D.      Pursuant to 17 U.S.C. §§ 504 and 1203(c), awarding Defendants their actual damages and Plaintiffs' profits attributable to the infringement and the CMI violations, or, at Defendants' election for either or both causes of action, statutory damages;

E.      Awarding Defendants their attorney's fees (17 U.S.C. §§ 505 and 1203(b)(5); Fed. R. Civ. P. 54(d));

F.      Awarding Defendants their other costs, expenses, and disbursements;

G.      Awarding Defendants pre- and post- judgment interest; and

H.      Granting Defendants such other and further relief as the Court deems just.


Dated: June 11, 2026

FIRESTONE GREENBERGER PLLC
*Attorneys for Defendants/Counterclaimants*

  /s/ Jordan Greenberger
Jordan Greenberger
Callie J. Kramsky
104 West 40th Street, 4th Floor
New York, NY 10018
(212) 597-2255
jg@firegreenlaw.com
ck@firegreenlaw.com

26